IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

RUBY SALVIN,

                **Plaintiff,**

v.                                                                                                      Civil Action No. 2:06cv264

AMERICAN NATIONAL PROPERTY
& CASUALTY COMPANY

and

AMERICAN NATIONAL INSURANCE COMPANY,

                **Defendants.**

**OPINION and ORDER**

      This matter is before the court on defendants', American National Property & Casualty Company ("ANPAC") and American National Insurance Company ("ANICO"), separate Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), both filed on May 22, 2006. The court has reviewed the record and the supporting briefs and finds that a hearing is unnecessary for the resolution of the issues presented.  For the reasons set out herein, the court **GRANTS** the defendants' motions to dismiss as to the plaintiff's claims for tortious interference with potential economic relationships, breach of contract with regard to the sales quota agreement, punitive damages, and fraud/constructive fraud, but **DENIES** the defendants' motions as to the plaintiff's breach of contract claim based on the alleged altered records and the retroactive change to the plaintiff's agency profile score.

## I. Factual and Procedural Background

On March 17, 2006, the plaintiff, Ruby Salvin, through counsel, brought the instant action against defendants ANPAC and ANICO in the Circuit Court for the City of Chesapeake, Virginia. On April 17, 2006, the plaintiff filed an Amended Motion for Judgment alleging tortious interference with existing or potential economic relationships, fraud/constructive fraud, and breach of contract. The plaintiff's claims arise from her position as an independent contractor insurance agent for defendants ANPAC and ANICO.

As the matter is before the court on the defendants' motions, the following facts are construed in the light most favorable to the plaintiff, the non-moving party. See Schatz v. Rosenberg, 943 F.2d 485, 489 (4th Cir. 1991). In or about September 1996, the plaintiff accepted an offer to work as an independent contractor selling property and casualty insurance throughout the Tidewater area for ANPAC and life and health insurance for ANICO.[1] The plaintiff entered into separate but similar written agreements with the defendants. In both of these agreements, the plaintiff's compensation was based solely on commission from the sale of insurance policies. The parties agreed that the plaintiff's compensation would be paid pursuant to a Post-Termination Compensation Scheme. Under such arrangement, upon her termination with the defendants, the plaintiff would receive commissions on the insurance policies she had sold during the sixty month period prior to her termination.

The plaintiff claims that after she entered into these agreements, and throughout the term of her relationship with the defendants, senior management for both defendants directed her not to issue insurance policies to military servicemen or servicewomen. The plaintiff claims that on

---

[1] The ANPAC agreement is dated September 25, 1996, and the ANICO agreement is dated January 18, 2001. However, the plaintiff's Amended Motion for Judgment states that she started working as an independent contractor for both defendants in September 1996.

or about July 31, 2002, she was placed on probation by the defendants and assigned to the defendants' "Special Assistance Unit", which was under the direction of Underwriter Eric Sallee. The plaintiff claims that in August 2002, Sallee told the plaintiff that she was not to sell insurance to "military people."

Furthermore, on September 22, 2003, the plaintiff claims that Jimmy Strickland, the defendants' Regional Agency Director, told her that she had twelve months to achieve a specified sales goal. However, Strickland told her that she was required to achieve this sales goal while operating under restrictions as to what kind of insurance she could sell and to whom she could sell such insurance. Specifically, the plaintiff claims that Strickland told her she could not sell to customers in the military, stating: "[T]he Company does not want the military business. They are here today, gone tomorrow." (Am. Mot. for J. ¶ 6.) The plaintiff claims that when she objected to this restriction, Strickland stated, "Ruby, you are damned if you do, and damned if you don't." (Id.) The plaintiff claims that based on the representations of Sallee and Strickland, the plaintiff did not sell to individuals in the military, and as a result, she was damaged when defendants purchased her agency for only $16,051.67 pursuant to the Post-Termination Compensation provisions of the agreements.

In addition, the plaintiff claims that she relied on Strickland's September 22, 2003 representation that she had twelve months to reach a particular sales goal, but that the defendants both terminated their agreements with her before one year had passed. ANPAC terminated its agreement with the plaintiff on May 28, 2004, and ANICO terminated its agreement on August 17, 2004. Furthermore, the plaintiff claims that by April 2004, she had brought her sales score up to 627, but that once she had achieved this goal, the defendants changed a criterion used to determine the plaintiff's agency profile score. The plaintiff claims that this change retroactively

reduced her total score by fifty points.

In addition, the plaintiff claims that, after terminating her, the defendants altered her records to reflect that she sold fewer policies than she actually did. Specifically, the plaintiff claims that in 2003, she submitted twenty-six life insurance applications, twenty-five of which were accepted by the defendants. Between January and May of 2004, she claims that she submitted twelve life insurance applications; the defendants issued policies for all of these. However, the plaintiff claims that after her termination, the defendants altered her records to reflect that she had only submitted eight applications in 2003 and seven applications in 2004. The plaintiff claims that the defendants refused to make corrections after she pointed out the discrepancies and that such changes had a serious adverse impact on the value of her agency under the Post-Termination Compensation Schedule. Based on the above facts, the plaintiff alleges claims for tortious interference with existing or potential economic relationships, fraud/constructive fraud, and breach of contract. The plaintiff asks for compensatory and punitive damages.

On May 15, 2006, the defendants filed a joint notice of removal with this court, and on May 22, 2006, the defendants filed separate but similar motions to dismiss claiming that the plaintiff has failed to state a claim for which relief can be granted. On June 5, 2006, the plaintiff filed her response, and on June 12 and 13, 2006, respectively, ANICO and ANPAC filed their replies. Thus, the defendants' motions are ripe for review.

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits the defendant to request dismissal if the plaintiff has filed a claim upon which relief cannot be granted. FED. R. CIV. P. 12(b)(6). In assessing a motion to dismiss for failure to state a claim upon which relief can be granted, "a

count should be dismissed only where it appears beyond a reasonable doubt that recovery would be impossible under any set of facts which could be proven." America Online, Inc. v. GreatDeals.Net, 49 F. Supp. 2d 851, 854 (E.D. Va. 1999).  The court must "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations."  Eastern Shore Markets, Inc. v. J.D. Associates Ltd., 213 F.3d 175, 180 (4th Cir. 2000) (citations omitted).

While the court must take the facts in the light most favorable to the plaintiff, the court is not bound with respect to the complaint's legal conclusions.  See Schatz v. Rosenberg, 943 F.2d 485, 489 (4th Cir. 1991). Dismissal pursuant to Rule 12(b)(6) is appropriate when upon considering the facts set forth in the complaint as true and construing the facts in the light most favorable to the non-moving party, there is no basis on which relief can be granted.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  Dismissal should not be granted unless the moving party can demonstrate that no set of allegations will support the complaint.  Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989); District 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp., 609 F.2d 1083 (4th Cir. 1979).

Furthermore, under limited circumstances, a court may consider documents attached to a motion to dismiss without converting it to one for summary judgment. Gasner v. Dinwiddie, 162 F.R.D. 280, 282 (E.D. Va. 1995). The Fourth Circuit has held that "when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." Am. Chiropractic v. Trigon Healthcare, 367 F.3d 212, 234 (4th Cir. 2004)(citing Phillips v. LCI Int'l Inc., 190 F.3d 609, 618 (4th Cir. 1999)(citations omitted)(alternations in original); see also Witthohn v. Fed. Ins. Co., 164 Fed. Appx. 395, 397

(4th Cir. 2006).

### III. Discussion

Although the defendants have filed separate motions to dismiss, such motions are virtually identical in the arguments that they set forth. Thus, this court will address them together. In their motions to dismiss, the defendants argue that the plaintiff's Amended Motion for Judgment should be dismissed because she has failed to state a claim for which relief can be granted. Specifically, the defendants claim that the plaintiff has failed to allege facts sufficient to support claims for tortious interference with potential economic relationships, fraud/constructive fraud, and breach of contract. Furthermore, defendant ANPAC contends that even if the plaintiff has sufficiently plead her claim, she is not sufficiently plead facts to support a claim for punitive damages. The court addresses each of the plaintiff's claims below.

**A.     Tortious Interference with Existing or Potential Economic Relationships**

First, the plaintiff claims tortious interference with existing or potential economic relationships based on the defendants' alleged instructions not to sell insurance to individuals who are in the military. In Virginia, in order to establish a claim for tortious interference with a business expectancy, the plaintiff must allege facts to support the following elements: (1) the plaintiff had a business expectancy; (2) the defendant knew of the expectancy; (3) the defendant intentionally interfered with the expectancy; (4) the defendant used improper means or methods to interfere with the expectancy; and (5) the plaintiff suffered a loss as a result of the defendant's disruption of the business expectancy. Maximus, Inc. v. Lockheed Info. Mgmt. Sys. Co., 254 Va. 408, 414 (1997); see also Simbeck, Inc. v. Dodd Sisk Whitlock Corp., 257 Va. 53, 58 (1999). In addition, in 17th St. Assocs., LLP v. Markel Int'l Ins. Co., 373 F. Supp. 2d 584, 600 (E.D. Va. 2005), this court concluded that there are also two unstated elements for a claim for tortious

interference with a business expectancy: "a competitive relationship between the party interfered with and the interferor" and "contact by the defendant with the source of the plaintiff's business expectancy." Id. at 600-01.

First, and most important, this court finds that the plaintiff's claim must fail because she has not sufficiently alleged a specific business expectancy. Under Virginia law, in order to establish a valid business expectancy, the plaintiff must "plead a *specific* prospective economic advantage or business expectancy". Gov't Emples. Ins. Co. v. Google, Inc., 330 F. Supp. 2d 700, 705 (E.D. Va. 2004) (emphasis added). "The evidence of an expectancy must establish expectancy by and between two parties at least, based upon something that is a concrete move in that direction." Id. (citing Moore v. United Int'l Investigative Services, Inc., 209 F. Supp. 2d 611, 619-20 (E.D.Va. 2002); Masco Contractor Services East, Inc. v. Beals, 279 F. Supp. 2d 699 (E.D.Va. 2003)("there must be a particular expectancy which [claimant] is reasonably certain will be realized")(citations and internal quotations omitted)). In Google, the court held that a general expectancy that consumers would have purchased insurance from a website was not sufficient to establish that the plaintiff had a valid business expectancy. Id. A plaintiff's hope of a business relationship is not enough to establish this first element. Moore, 209 F. Supp. 2d at 619-620 (E.D. Va. 2002).

In this case, the plaintiff has alleged that the defendants tortiously interfered with her ability to sell to military personnel by instructing her not to sell to such individuals. However, the plaintiff's expectation to sell to military personnel is not specific enough to establish that she had a valid business expectancy. The plaintiff has not identified any individuals to whom she thought she would sell insurance or any specific sales that were thwarted by the defendants' alleged instructions. Instead, the plaintiff's claim is simply based on the general possibility that she would

have sold insurance to military personnel had the defendants not given her the instruction not to do so. In other words, the plaintiff's claim simply alleges a hope that she would have been able to sell more insurance policies if she had been able to sell to people in the military. Thus, she is not able to establish that she had a valid business expectancy.

Next, the plaintiff has not alleged that there is a competitive relationship between her and the defendants, which is an essential element to her claim. See 17th St. Assocs., LLP v. Markel Int'l Ins. Co., 373 F. Supp. 2d 584, 600 (E.D. Va. 2005). In fact, the plaintiff was an independent contractor for the defendants and was selling insurance on the defendants' behalf. Thus, the more insurance policies she sold, the more money both the plaintiff and the defendants would make. Furthermore, the plaintiff has not alleged that the defendants made contact with any person to whom she anticipated selling insurance. Such an allegation would be impossible for the plaintiff to make since she has not identified any particular servicemen or servicewomen with whom she had a business expectancy. As this court explained in 17th St. Associates, the competition and contact elements provide prima facie evidence of a motive to interfere and indicate that the interference actually took place. Without the existence of these two elements, the plaintiff's claim must fail.

Furthermore, the plaintiff's tortious interference claim fails because an entity cannot interfere with its own contract. Fox v. Deese, 234 Va. 412 (1987). In this case, any contracts that the plaintiff would have entered into with military personnel would actually have been the defendants' contracts, since the plaintiff was an agent of the defendants. Therefore, the defendants could not have interfered with their own business expectancies.

The defendants argue that, in addition to the missing elements discussed above, the plaintiff has not established that the defendants used improper methods to interfere with her

8

expectancy. Specifically, the defendants claim that even if they did tell the plaintiff not to sell insurance to individuals in the military, which the defendants strongly dispute, such instruction was not improper because it was not illegal. Although sections 38.2-508.1 and 38.2-2213 of the Code of Virginia prohibit someone from refusing to issue or to continue insurance policies to members of the armed forces, the defendants claim that by instructing the plaintiff not to solicit such individuals, *they* did not violate the statutes. Instead, the defendants claim that by making the alleged instruction, which they dispute, they simply *instructed her* to violate the statutes. Furthermore, the defendants contend that since the plaintiff has not claimed that she actually refused to sell insurance to any particular military personnel, then she never violated the statute either. Therefore, the defendants claim that their alleged instruction was not improper because it was not illegal.

The defendants' statement that a method must actually be illegal in order to be considered improper is not entirely accurate. Under Virginia law, a method or manner may also be improper if it "violate[s] an established standard of a trade or profession, . . . involve[s] unethical conduct[,] [s]harp dealing, overreaching, or unfair competition". Duggin v. Adams, 234 Va. 221, 228 (1987). Thus, there is the possibility that the defendants' alleged instruction could be deemed improper even if it did not technically violate the law. However, such a finding is unnecessary in this case because of the numerous other elements of a tortious interference claim that the plaintiff has failed to allege. Thus, the court reserves judgment on the issue of whether the defendants' alleged methods were improper.

In sum, the plaintiff has failed to state a claim for tortious interference with a business expectancy because she has failed to allege a specific business expectancy or relationship, failed to allege that there was a competitive relationship between her and the defendants, and failed to

9

allege that the defendants made contact with the source of her business expectancy.

**B.     Fraud/Constructive Fraud**

The plaintiff's second claim is for fraud or constructive fraud based on the fact that the "[d]efendants made material false representations to the Plaintiff." (Am. Mot. for J. ¶ 20.) The defendants argue that the plaintiff's fraud claim should be dismissed because she has not pled such claim with sufficient particularity. In the plaintiff's response to the defendants' argument, she states the following: "In accordance with Rule 15(a), FRCP, Plaintiff intends to file an Amended Complaint which will not include her fraud claims." (Pl. Response at p.3, Part II.)[2] The court interprets this statement as a concession that she has failed to state a claim for fraud/constructive fraud under Virginia law, and thus, is withdrawing her fraud claims. Accordingly, the court finds that the plaintiff has failed to state a claim for fraud or constructive fraud.

**C.     Breach of Contract**

The plaintiff's final claim against the defendants is for breach of contract based on the fact that the defendants allegedly breached their sales quota agreement. From the facts alleged in the Amended Motion for Judgment, it appears that the plaintiff is probably referring to Strickland's representation to her that she had twelve months to meet a particular sale goal, and that the defendants breached this agreement by terminating her before twelve months had passed. However, in her response to the defendants' motion to dismiss, the plaintiff claims that her breach of contract claim is also based on the fact that the defendants altered her records to show that she sold fewer policies than she actually did. The plaintiff explains that the parties had entered into a

---

[2] The court notes that the plaintiff has not filed a motion to amend her complaint, and the court does not interpret the above statement as a request to do so. Furthermore, the plaintiff has already amended her Motion for Judgment once in state court.

10

Post-Termination Compensation Scheme agreement, and thus, by altering her sales record, they paid her less than what she was due under the agreement.

The defendants contend that the plaintiff's breach of contract claim fails for two reasons. First, they argue that the plaintiff's breach of contract claim as to Strickland's representation must fail because such representation was not part of the written agreement that the parties executed, and all modifications to the agreements had to be in writing. Furthermore, Strickland did not promise the plaintiff anything if she met the specified goal. Second, the defendants argue that the plaintiff should not be allowed to base her breach of contract claim on the alleged alteration of records because she failed to set forth such facts in her Amended Motion for Judgment.

Under Virginia law, the elements of a breach of contract claim are: "1) a legally enforceable obligation of a defendant to a plaintiff; 2) the defendant's violation or breach of that obligation; and 3) injury or damage to the plaintiff caused by the breach of obligation." 17th St. Assocs., LLP v. Markel Int'l Ins. Co., 373 F. Supp. 2d 584, 597 (E.D. Va. 2005) (citing Filak v. George, 267 Va. 612, 619 (2004) (citations omitted)).

In this case, the plaintiff entered into separate written agreements with both defendants that set forth the terms of their relationship. Although the agreements are separate, they both contain virtually identical language as to termination and modification of the agreements. As to termination, both agreements state that the plaintiff agrees that the defendant companies have not expressly or by implication agreed to continue the agreement for a definite period of time and that either party has the right to terminate the agreement at any time without cause by giving written notice at least thirty days prior to the date fixed for termination. (ANICO Agreement ¶ 7 A, B; ANPAC Agreement Sec. III ¶ A, B.) Furthermore, both agreements state that any modification of the agreement must be signed in writing by the plaintiff and a company representative. (ANPAC

Agreement ¶ H1; ANICO Agreement ¶ 15.)

Based on the above sections of the agreements, even if Strickland did tell the plaintiff that she had twelve months to reach a particular sales goal, such representation would not constitute an amendment to the parties' agreements because this alleged statement was not in writing and signed by both parties. Although the plaintiff implies that the defendants breached their agreements by terminating her before the twelve months had passed, she does not allege that Strickland promised that she would not be terminated before the end of the twelve month period or that she would receive any sort of compensation if she did reach the specified sales goal. Furthermore, both agreements explicitly state that the defendants have not represented that the agreements are for any definite period of time and can be canceled at any time within thirty days written notice.[3] Accordingly, the plaintiff's claim for breach of contract based on the alleged twelve month sales quota agreement must fail.

However, as to the plaintiff's breach of contract claim based on the altered records, the court finds that the plaintiff has stated a claim upon which relief could be granted. As stated above, the defendants argue that the plaintiff should not be allowed to base her breach of contract claim on the alleged altered records because she failed to make such a claim in her Amended Motion for Judgment. Specifically, the defendants argue that in her Amended Motion for Judgment, the plaintiff's breach of contract claim is based solely on the sales quota agreement, not the alleged altered records. However, in the plaintiff's response to the defendants' motion to dismiss she alleges that her breach of contract claim is also based on the alleged altered records.

After reviewing at the plaintiff's Amended Motion for Judgment, the court finds that the plaintiff has stated a claim for breach of contract based on the alleged altered records. Paragraphs

---

[3] The plaintiff does not appear to allege that the defendants did not give her thirty days notice.

11 and 12 of the Amended Motion for Judgment, which are set forth under the section entitled "FACTS", state:

> 11. In 2003 Plaintiff SALVIN submitted 26 life insurance applications, 25 of which were accepted by Defendants. In 2004 between January and May Plaintiff SALVIN submitted 12 life insurance applications and Defendants issue policies on all of these applications. After terminating Plaintiff SALVIN's agreements Defendants fraudulently altered records to reflect that plaintiff SALVIN had submitted only 8 applications in 2003, and only 7 applications in 2004.
>
> 12. Defendant's alteration of these records and subsequent refusal to make appropriate corrections despite repeated efforts by Plaintiff SALVIN to point out the discrepancies had a serious adverse impact on the value assigned to her agency by Defendants under Post-Termination Compensation Schedule provisions of the parties agreements.

(Am. Mot. for J. ¶ 11-12.)

Under the subsection entitled "BREACH OF CONTRACT", which consists of paragraphs 25 through 29, the Amended Motion for Judgment re-alleges paragraphs 1-24, and also states the following:

> 26. Plaintiff and Defendants entered into agreements as set forth herein concerning Plaintiff's sales quota.
> 27. There was adequate consideration supporting the parties' sales quota agreements.
> 28. Defendants breached these sales quota agreements.
> 29. Plaintiff has suffered actual damages as a result of Defendants' breach of contract in an amount not to exceed 250,000.

(Am. Mot. for J. ¶ 26-29.)

As illustrated above, the plaintiff does claim in her complaint that the defendants altered her records that she submitted to them, and that these alleged alterations caused her to suffer a loss under the Post-Termination Compensation Schedule set forth in the agreements. The fact that the plaintiff initially alleges these facts under the subsection entitled "FACTS", instead of under the subsection "BREACH OF CONTRACT", does not necessarily mean that she has failed to

state a claim based on the alleged alterations. Moreover, by re-alleging paragraphs 1-24 under the "BREACH OF CONTRACT" heading, the plaintiff technically alleged the facts regarding the alteration of her records under her breach of contract claim. Furthermore, in its reply, defendant ANICO concedes that the allegations regarding the alteration of records could form the basis of a contract claim, if the plaintiff had not already limited her contract claim to the sales quota agreement. Accordingly, the court finds that the plaintiff has sufficiently pled a breach of contract claim based on the alleged alteration of her records.[4]

**D.     Punitive Damages**

Lastly, ANPAC argues that the plaintiff has failed to state a claim for punitive damages under Virginia law because her claims are essentially all based on a breach of a contractual duty. However, it appears that the plaintiff is withdrawing her punitive damages claim as reflected by the following statement in her response: "Pursuant to Rule 41(a), Plaintiff will file an Amended Complaint including changes to her punitive damages allegations." (Pl. Response at 4.) Because Rule 41(a) of the Federal Rules of Civil Procedure addresses dismissal, the court finds that the plaintiff is withdrawing her claim for punitive damages.

Nonetheless, the Supreme Court of Virginia has held that in cases involving a breach of contract, "proof of an independent, wilful tort, beyond the mere breach of a duty imposed by contract. . . [is] . . . a predicate for an award of punitive damages, regardless of the motives underlying the breach." Kamlar Corp. v. Haley, 224 Va. 699, 707 (1983). However, the court

---

[4]The court notes that it is unclear whether the defendants' alleged retroactive change in a criterion used to determine plaintiff's agency profile score, which is set forth in paragraph 8 of the Amended Motion for Judgment, is related to the plaintiff's claim that the defendants altered her records. Regardless, the court finds that, at this point, since the defendants have not responded to this particular claim, the plaintiff should also be able to proceed on this allegation under her breach of contract claim.

explains that a "simple breach of contract claim, accompanied by ulterior motives, in the absence of an independent tort" is not sufficient to justify punitive damages. Furthermore, "'the duty tortiously . . . breached must be a common law duty, not one existing between the parties solely by virtue of the contract.'" 17th St. Assocs., LLP v. Markel Int'l Ins. Co., 373 F. Supp. 2d 584, 599 (E.D. Va. 2005)(quoting Foreign Mission Bd. v. Wade, 242 Va. 234, 241 (1991)(additional citation omitted)).

In this case, the court finds that the plaintiff's claims are not sufficient to support a claim for punitive damages because her claims stem from the duties imposed by contract. Although she has also alleged individual torts in addition to her breach of contract claim, the alleged duties breached exist solely by virtue of the agreements that the parties entered. Furthermore, even if the plaintiff's tort claims did not exist solely by virtue of the contract, the court has already dismissed these claims. Accordingly, even though it appears that the plaintiff is withdrawing her claim, the court finds that the plaintiff has failed to state a claim for punitive damages.

### IV. Conclusion

After reviewing the facts in the light most favorable to the plaintiff, the court finds that the plaintiff has failed to state a claim upon which relief can be granted with regard to her claims for tortious interference with potential economic relationships, breach of contract related to the sales quota agreement allegedly represented to her by Strickland, and punitive damages. However, the plaintiff has sufficiently stated a breach of contract claim based on the defendants' alleged alteration of the plaintiff's records, including the alleged retroactive change to her agency profile score. The plaintiff has withdrawn her fraud/constructive fraud claim. Accordingly, the defendants' motions to dismiss pursuant to Rule 12(b)(6) are **GRANTED** as to the plaintiff's claims for tortious interference with potential economic relationships, breach of contract with

regard to the sales quota agreement represented by Strickland, fraud/constructive fraud, and punitive damages, but **DENIED** as to her claim for breach of contract based on the alleged alteration of her records, which includes the alleged retroactive change in criterion affecting the plaintiff's agency profile score. Thus, the plaintiff can proceed with her breach of contract claim based on these theories.

In addition, the court **DIRECTS** the Clerk to redact what appears to be the plaintiff's social security number from the last page of the January 18, 2001 "Agent Agreement", which is attached as part of Exhibit C to the defendants' Joint Notice of Removal and Exhibit A to ANICO's memorandum in support of its motion to dismiss.

The Clerk is **REQUESTED** to mail copies of this order to counsel for all parties.

**IT IS SO ORDERED.**

/s/
Jerome B. Friedman
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
July 25th, 2006

16