**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**RUBY SALVIN,**

        **Plaintiff,**

v.                                    **Civil Action No. 2:06cv264**

**AMERICAN NATIONAL INSURANCE**
**COMPANY,**

        **Defendant.**

## ORDER AND OPINION

Currently before the court is the defendant's Motion for Attorneys' Fees and Costs, brought pursuant to 28 U.S.C. § 1927, Fed. R. Civ. P. 54(d), and the inherent authority of the court. The court has examined the briefs and the record, and has considered the arguments presented at the hearing on the matter held on January 29, 2007. The court, for the reasons set out fully herein, **GRANTS** the defendant's motion and **ORDERS** the plaintiff's counsel, Thomas Hennessy, to pay to the defendant the requested attorneys' fees. Further, the court **ORDERS** the plaintiff, Ruby Salvin, to pay the defendant the requested costs.

## I. Factual Background

The plaintiff, Ruby Salvin, was an independent contractor of the defendant, American National Insurance Company ("ANICO"), between 1996 and 2004. The plaintiff sold life and health insurance policies backed by the defendant in exchange for commissions on those sales.[1]

---

[1]The plaintiff had a similar arrangement to sell property and casualty insurance of American National Property and Casualty Insurance Company ("ANPAC"), a wholly-owned subsidiary of ANICO. The plaintiff filed suit against both ANICO and ANPAC, and this court's

The plaintiff's employment relationship with the defendant was governed by an employment agreement that specifically provided that either party could terminate the agreement by giving written notice to the other party at least thirty days in advance of the termination date.  In accordance with a Post-Termination Compensation Schedule, the plaintiff was paid $16,051.67 by the defendant and ANPAC for her agency at the time her employment with both was terminated.

## II.  Procedural History

On March 17, 2006, the plaintiff, by and through counsel Thomas F. Hennessy, brought suit against the defendant and ANPAC in the Circuit Court for the City of Chesapeake, Virginia. On April 17, 2006, the plaintiff filed an amended motion for judgment.  The plaintiff claimed breach of contract, tortious interference with existing or potential economic relationships, and fraud/constructive fraud.  Specifically, the plaintiff averred that the defendant and ANPAC breached their contracts with her by terminating her only a few months after orally promising employment to her for at least twelve months, and that the defendant and ANPAC breached her contract by altering records of the number of policies she had sold in order to decrease the compensation she was paid after her agency was terminated.  The plaintiff also alleged that the defendant and ANPAC had unlawfully restrained her from selling insurance policies to those in the military.

On May 15, 2006, the defendant and ANPAC removed the case to this court on the basis of diversity jurisdiction.  On May 22, 2006, the defendant and ANPAC filed separate but similar motions to dismiss pursuant to FED. R. CIV. P. 12(b)(6), on the grounds that the plaintiff had

_____

dismissal order governed her claims against both companies.

failed to state a claim for which relief could be granted.  On July 25, 2006, this court issued an order granting the defendant and ANPAC's motions in part and dismissing all but the plaintiff's breach of contract claim with regard to altered records.  The court held that the motions to dismiss were "**DENIED** as to [the plaintiff's] claim for breach of contract based on the alleged alteration of her records, which includes the alleged retroactive change in criterion affecting the plaintiff's agency profile score. Thus, the plaintiff can proceed with her breach of contract claim based on these theories." (Opinion and Order, July 25, 2006, at 16).

After the dismissal of all but one of the plaintiff's claims, the defendant took the plaintiff's deposition on August 28, 2006.  Such testimony revealed that the plaintiff's remaining claim was unfounded, and counsel for the defendant informed counsel for the plaintiff of this inconsistency shortly thereafter.  At that time, the defendant's counsel suggested that the plaintiff should voluntarily dismiss her remaining claim, but the plaintiff's counsel, Mr. Hennessy, declined the suggestion.  Defense counsel then mentioned the possibility of sanctions.  There is some dispute as to how Mr. Hennessy responded, but, in the end, the case was not voluntarily dismissed.  Subsequently, on September 27, 2006, the defendant filed a motion for summary judgment on the plaintiff's remaining claim.  In response to that motion, the plaintiff submitted a brief which attempted to recast her breach of contract claim as founded on the termination of her agency by the defendant and alleged misuse of an "Agency Profile" scoring system.  The plaintiff attached a sworn affidavit of herself which contradicted her deposition testimony.  The defendant filed a reply brief on October 17, 2006, which highlighted the inconsistencies in the plaintiff's claims and urged the court to grant summary judgment in its favor.

On October 31, 2006 this court granted the defendant's motion for summary judgment as

to the plaintiff's remaining claim, and dismissed the matter as to the defendant.  On November 9, 2006, the defendant filed the instant motion, seeking to have the court order the plaintiff's counsel to reimburse it for the legal fees associated with the defense of the claims against it.  The defendant argues that, because the plaintiff's claims were shown to be clearly without merit, the plaintiff's attorney violated 28 U.S.C. § 1927 by failing to voluntarily dismiss the lawsuit when it became clear that the plaintiff could not succeed with her case against the defendant, thereby multiplying the litigation in bad faith.  Alternatively, the defendant argues that this court possesses the inherent authority to order the plaintiff's counsel to pay reasonable attorneys' fees as a result of continuing the proceedings in bad faith once it was clear that the plaintiff's claims were groundless.  Further, the defendant seeks to have the plaintiff taxed for its costs, pursuant to FED. R. CIV. P. 54(d).

　　　　Mr. Hennessy filed a response brief on November 24, 2006, in which he argued that his actions did not meet the standard required under section 1927, and that neither section 1927 nor the court's inherent authority permits imposition of fees and costs against him.  Mr. Hennessy specifically objects to the failure of the defendant to proceed in accordance with Rule 11 of the Federal Rules of Civil Procedure, and argues that the statutory and inherent authority proffered by the defendant should not be implemented to substitute for Rule 11 sanctions that could have been, but were not, brought by the defendant.  The defendant filed a reply brief on December 4, 2006, beyond the deadline for such a submission.  However, because the brief raises no new issues, but is simply a reiteration of the defendant's initial argument, the court sees no harm in considering it, and it is **ORDERED** filed.  On January 29, 2007, the court held oral argument in this matter.  The court took the argument of counsel under advisement, and is now prepared to

4

rule on the defendant's motion.

## III.  Standard of Review

## A.  Attorneys' Fees

## i.  Section 1927

Title 28, United States Code, Section 1927 provides, in its entirety:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.  The statute applies to attorneys who have "unreasonably and vexatiously" multiplied proceedings in a court.  It therefore "does not distinguish between winners and losers or between plaintiffs and defendants, and is indifferent to the equities of a dispute and to the values advanced by the substantive law."  Roadway Express, Inc. v. Piper, 447 U.S. 752, 762 (1980).  Section 1927 "is concerned only with limiting the abuse of court processes."  Id.  Thus, "an attorney who files a meritless claim may not be sanctioned under § 1927 if he does not engage in such [abusive] conduct.  Section 1927 focuses on the conduct of the litigation and not on its merits."  DeBauche v. Trani, 191 F.3d 499, 511 (4th Cir. 1999).  Additionally, the court notes that section 1927 is not interchangeable with Rule 11 of the Federal Rules of Civil Procedure.  "Section 1927 was intended to sanction conduct Rule 11 does not reach; i.e. protracting or multiplying the litigation to run up the opposing party's costs, remedied by awarding excess attorneys' fees and costs."  Bakker v. Grutman, 942 F.2d 236, 242 (4th Cir. 1991) (emphasis in original).

Indeed, Rule 11 by its terms governs only papers filed with the court.  See FED. R. CIV. P. 11(b); Chambers v. NASCO, Inc., 501 U.S. 32, 41 (1991).  Therefore, Rule 11 is inapplicable

5

where, as here, the defendant has alleged that the plaintiff's attorney's error was in <u>failing</u> to file

a voluntary dismissal of the plaintiff's claim.  Therefore, Mr. Hennessy's conduct is more

properly viewed in light of section 1927, which applies where an attorney has multiplied or

protracted a legal proceeding, and is not limited in scope to the filing of false or frivolous papers

with the court.

     The Fourth Circuit has indicated that section 1927 requires an attorney to have acted in

bad faith.  <u>Brubaker v. City of Richmond</u>, 943 F.2d 1363, 1382 n.25 (4th Cir. 1991) ("Like an

award [of attorneys' fees] under the court's inherent power, section 1927 also requires a finding

of counsel's bad faith as a precondition to the imposition of fees.").  An important distinction is

to be drawn between the two types of bad faith recognized by courts: <u>subjective</u> and <u>objective</u>.

Although the Fourth Circuit appears to have not directly addressed this distinction, it has

indicated that section 1927 only requires the lower, objective standard of bad faith.  <u>See</u> <u>Fahrenz</u>

<u>v. Meadow Farm P'ship</u>, 850 F.2d 207, 211 n.1 (4th Cir. 1988).  In <u>Fahrenz</u>, the court addressed

the propriety of sanctions under FED. R. CIV. P. 11, and commented that "[i]n order to determine

'improper motive' under Rule 11, a court must judge the attorney's conduct under an objective

standard of reasonableness rather than assessing subjective intent."  <u>Id.</u> at 210.  The court went

on to compare Rule 11 to 28 U.S.C. § 1927, noting that both would authorize sanctions in the

case before it.  <u>See also</u> <u>Stevens v. Lawyers Mut. Liability Ins. Co. of  N.C.</u>, 789 F.2d 1056, 1060

(noting that Rule 11 requires a court to "judge the attorney's conduct under an objective standard

of reasonableness rather than by assessing subjective intent").  In addition, this court, in

<u>Williams v. Family Dollar Servs., Inc.</u>, 327 F.Supp.2d 582 (E.D. Va. 2004), clearly stated that

"'vexatious' conduct, by definition, 'involves either subjective or objective bad faith.'"  <u>Id.</u> at

585 (quoting <u>United States ex rel Union Light and Power Co. v. CamCo Const. Co., Inc.</u>, 221

F.Supp.2d 630, 634 (D. Md. 2002).[2]

A recent case from the Seventh Circuit further supports the use of the objective bad faith

standard in evaluating claims under section 1927.  In <u>Dal Pozzo v. Basic Mach. Co., Inc.</u>, 463

F.3d 609, 614 (7th Cir. 2006), the court distinguished between objective and subjective bad faith

in the context of section 1927:

> Subjective bad faith, the more difficult type of bad faith to prove, is not always
> necessary.  Subjective bad faith must be shown only if the conduct under consideration
> had an objectively colorable basis.  The standard for objective bad faith does not require
> a finding of malice or ill will: reckless indifference to the law will qualify.  If a lawyer
> pursues a path that a reasonably careful attorney would have known, after appropriate
> inquiry, to be unsound, the conduct is objectively unreasonable and vexatious.

<u>Id.</u> (internal quotation and citations omitted).  <u>Accord</u> <u>Kotsilieris v. Chalmers</u>, 966 F.2d 1181,

1185 (7th Cir. 1992) ("[T]he bad faith standard has an objective component, and extremely

negligent conduct, like reckless and indifferent conduct, satisfies this standard."); <u>Coghlan v.</u>

<u>Starkey</u>, 852 F.2d 806, 814 (5th Cir. 1988) ("'While the language of § 1927 suggests deliberate

misbehavior, subjective bad faith is not necessary; attorneys have been held accountable for

decisions that reflect a reckless indifference to the merits of a claim.'") (quoting <u>Reliance Ins.</u>

<u>Co. v. Sweeney Corp.</u>, 792 F.2d 1137, 1138 (D.C. Cir. 1986)).

Although at first blush the Fourth Circuit's decision in <u>Blair v. Shenandoah Women's</u>

---

[2]The court is aware of the opinion in <u>Royal Ins. v. Lynnhaven Marine Boatel, Inc.</u>, 216
F.Supp.2d 562 (E.D. Va. 2002), in which the court stated "[a]n award by the court of attorneys'
fees under . . . section [1927] is for conduct more egregious than behavior sanctionable under
Rule 11."  <u>Id.</u> at 566 (internal quotation omitted).  This case has been cited by Mr. Hennessy in
support of the argument that section 1927 requires a showing of subjective bad faith.
Nonetheless, the opinion does not make such a statement, and instead only cites <u>Brubaker</u> for the
proposition that the Fourth Circuit requires a finding of bad faith.  <u>Id.</u> at 566.

Ctr., Inc., 757 F.2d 1435 (4th Cir. 1985) might seem to support the notion that subjective bad

faith is required, upon closer reading this notion is disproven.  Despite the court noting that,

based on the litany of attorney misconduct before it, "we have no doubt that it tallies up to a

correct finding of subjective bad faith," id. at 1438, the court was discussing the district court's

sanction of an attorney via its inherent authority and Rule 11, not section 1927.  Indeed, the court

was not even announcing a standard of review for Rule 11, as it has repeatedly held that Rule 11

requires courts to "judge the attorney's conduct under an objective standard of reasonableness

rather than by assessing subjective intent."  Stevens v. Lawyers Mut. Liab. Ins. Co. of N.C., 789

F.2d 1056, 1060 (4th Cir. 1986).

Therefore, this court will apply the standard of objective bad faith in determining whether

Mr. Hennessy violated 28 U.S.C. § 1927 by refusing to dismiss the plaintiff's claims after being

informed by the defendant's attorneys of their baselessness, and by raising in opposition to

summary judgment a claim that had clearly and unequivocally been dismissed by the court.  The

award of sanctions under section 1927 is in the discretion of the district court.  See Chaudhry v.

Gallerizzo, 174 F.3d 394, 410 (4th Cir. 1999).  The decision of a district court to award sanctions

is entitled to substantial deference because the district court "is in the best position to review the

factual circumstances and render an informed judgment as it is intimately involved with the case,

the litigants, and the attorneys on a daily basis."  Blue v. U.S. Dep't of Army, 914 F.2d 525, 538

(4th Cir. 1990) (internal quotations omitted).  A finding of bad faith is a factual finding subject

to review for clear error.  See United States v. Wallace, 964 F.2d 1214, 1217 (D.C. Cir. 1992).


**ii.  Inherent Authority**

8

In addition to the authority granted under 28 U.S.C. § 1927, this court also possesses "the inherent authority in appropriate cases to assess attorneys' fees and impose other sanctions against a litigant or a member of the bar who has 'acted in bad faith, vexatiously, wantonly, and for oppressive reasons.'"  Williams v. Family Dollar Servs., Inc., 327 F.Supp.2d 582, 585 (E.D. Va. 2004) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991)).  "The bad faith exception for the award of attorneys' fees is not restricted to cases where the action is filed in bad faith.  '[B]ad faith may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation.'"  Roadway Express, Inc. v. Piper, 447 U.S. 752, 766 (1980) (quoting Hall v. Cole, 412 U.S. 1, 15 (1973)).  This court also has the power to invoke its inherent authority to sanction an attorney's conduct "even if procedural rules exist which sanction the same conduct."  Chambers, 501 U.S. at 49.

## B.  Reasonable Costs and Attorneys' Fees

Should the court determine that sanctions are appropriate under either 28 U.S.C. § 1927 or the court's inherent authority, it still must constrain an award of costs and attorneys' fees to one that is reasonable.  In assessing an award of attorneys' fees, the Fourth Circuit has required courts to consider twelve factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Arnold v. Burger King Corp., 719 F.2d 63, 67 n.4 (4th Cir. 1983) (internal quotation omitted).

Although this court must consider each of these factors, the Fourth Circuit has made it clear that "[t]he district court is not required to engage in a lengthy discussion concerning what portion of the award is attributable to each factor." Id.  This is because several of the factors "are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 434 n.9 (1983).

The court is also entitled to take into account the ability of the sanctioned party to pay. See, e.g., Byrd v. Hopson, 108 Fed. Appx. 749, 756 (4th Cir. 2004) (unpublished) (citing In re Kunstler, 914 F.2d 505, 523 (4th Cir. 1990)).  Although Kunstler addressed sanctions under Rule 11, it noted that "[t]he offender's ability to pay must also be considered, not because it affects the egregiousness of the violation, but because the purpose of monetary sanctions is to deter attorney . . . misconduct." Kunstler, 914 F.2d at 524.  See also Kapco Mfg. Co., Inc. v. C & O Enterprises, Inc., 886 F2d 1485, 1496 (7th Cir 1989) (noting that a court may take into account ability to pay in a section 1927 claim).

An award of costs is subject to Rule 54(d) of the Federal Rules of Civil Procedure, which states, in relevant part, "[e]xcept when express provision therefore is made either in statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." FED. R. CIV. P. 54(d)(1).  This rule "creates the presumption that costs are to be awarded to the prevailing party." Cherry v. Champion Int'l Corp., 186 F.3d 442, 446 (4th Cir. 1999).  However, a number of circumstances may be sufficient to overcome this presumption.  These include misconduct by the prevailing party that warrants a penalty, the inability of the losing party to pay, the excessiveness of costs in a particular case, the limited value of the prevailing party's victory, and the closeness of the

issues decided in the case.  Id.  A decision to deny costs, however, is subject only to review for abuse of discretion.  Id.

## IV.  Analysis

## A.  Attorneys' Fees

The defendant argues that 28 U.S.C. § 1927 and/or the court's inherent authority provides that the plaintiff's attorney should be liable to the defendant for its reasonable attorneys' fees incurred in defending a suit that was "unreasonably and vexatiously" multiplied.  The defendant claims that the plaintiff's attorney, Mr. Hennessy, continued to pursue claims that had already been dismissed by the court, and refused to dismiss the action when it was demonstrated to him that he could not win on the one claim that had not been dismissed.  The defendant argues that bad faith, a required finding for such sanctions, is found in the simple fact that the plaintiff's attorney continued to prosecute the case even after the plaintiff had acknowledged she had no evidence supporting a claim of altered documents.  Contrariwise, Mr. Hennessy asserts that the defendant's motion is probably motivated out of some sort of personal animus toward him by members of the law firm representing the defendant, Williams, Mullen, Clark and Dobbins ("Williams Mullen").  Specifically, he argues that attorneys at Williams Mullen had, as part of the settlement of a prior, unrelated lawsuit, required him to stipulate that he would not represent any plaintiff in any future cause of action against Williams Mullen.  He therefore asserts that the defendant's motion in this case is grounded in a desire by Williams Mullen attorneys to get revenge upon him.  Mr. Hennessy further claims, erroneously, that a finding of subjective bad

faith is required in order to sanction an attorney under section 1927.[3]

The defendant contends that this court's dismissal order was clear in that it permitted the plaintiff to proceed on one particular cause of action: a breach of contract claim based on allegedly altered records and unanticipated changes to the Agency Profile scoring system. However, the plaintiff revealed in her deposition of August 28, 2006 that she had no evidence that any documents had been altered, and was in fact not seeking anything related to payment of commissions to her.  (Deposition of Ruby Salvin, Defendant's Motion for Summary Judgment, Exhibit A, at 69-70).  The plaintiff also admitted that she understood that her employment agreement with the defendant was the sole source of governance of her agency relationship, and that her employment with ANPAC was separate and distinct.  (Deposition of Ruby Salvin, Defendant's Motion for Summary Judgment, Exhibit A, at 47-48).  The plaintiff acknowledged that the term "Agency Profile" appeared nowhere in her contract with the defendant, and that her commissions for the sale of insurance for the defendant were in no way affected by her "Agency Profile" score.  (Deposition of Ruby Salvin, Defendant's Motion for Summary Judgment, Exhibit A, at 87-88).

---

[3]Mr. Hennessy purportedly quotes the Fourth Circuit case of Brubaker v. City of Richmond, 943 F.2d 1363 (4th Cir. 1991), in support of this contention.  However, this court has been unable to locate the quoted text in that case, and Mr. Hennessy acknowledged this erroneous attribution during oral argument.  It appears that the text is from the Third Circuit decision of Baker Indus., Inc. v. Cerberus Ltd., 764 F.2d 204 (3d Cir. 1985), where the court stated that "before attorneys' fees and costs may be taxed under section 1927, there must be a finding of willful bad faith on the part of the offending attorney."  Id. at 209.  Although the Third Circuit has used the term "willful bad faith" to describe the standard required under section 1927, it has also indicated that "[i]n sum, a district court may in its discretion award attorney's fees to a prevailing defendant . . . upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith."  Ford v. Temple Hosp., 790 F.2d 342, 350 (3d Cir. 1986).

After the plaintiff's deposition revealed that she had no evidence to support the sole claim which had survived the defendant's motion to dismiss, the defense attorneys indicated to Mr. Hennessy that, in their opinion, Mr. Hennessy should dismiss the lawsuit, because the plaintiff had no chance of success on her remaining claim.  Mr. Hennessy declined the offer, and, according to his version of the story, offered to look at any Rule 11 "safe harbor" memorandum that the defense attorneys might be willing to draft.[4]  The defense attorneys have disputed the accuracy of this story, and instead aver that Mr. Hennessy simply declined their recommendation that he dismiss the action.  Regardless of the exact nature of their conversation, it is clear that Mr. Hennessy had reason to know that continued pursuit of his client's case could result in sanctions being levied against him.

It is also clear that the defendant is not pursuing sanctions under Rule 11, but rather under 28 U.S.C. § 1927 and the inherent authority of the court.  Although Mr. Hennessy has devoted a significant portion of his response brief to an argument as to why Rule 11 does not apply in this case, the defendant made it clear from the outset that it sought to recoup attorneys' fees and costs by alternative means.[5]  Rule 11 is coterminous with neither section 1927 nor the

---

[4]The 1993 amendments to FED. R. CIV. P. 11 added a "safe harbor" provision, that now gives a party or an attorney against whom sanctions are sought the opportunity to withdraw or correct the paper in question without consequences.  The rule states, in pertinent part, "[a] motion for sanctions under this rule . . . shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected."  FED. R. CIV. P. 11(c)(1)(A).  The Fourth Circuit has squarely adopted the 21-day notice provision.  See, e.g., Brickwood Contractors, Inc. v. Datanet Eng'g, Inc., 369 F.3d 385, 388-89 (4th Cir. 2004).

[5]Mr. Hennessy candidly admitted at oral argument his belief that, had the defendant brought the instant motion pursuant to Rule 11, his behavior would likely be sanctionable.  Nevertheless, he argues that Section 1927 requires a higher standard than Rule 11, which the

court's inherent authority.  See Chambers v. NASCO, Inc., 501 U.S. 32, 46 (1991) ("We discern

no basis for holding that the sanctioning scheme of the statute and the rules displaces the

inherent power to impose sanctions for the bad-faith conduct described above. These other

mechanisms, taken alone or together, are not substitutes for the inherent power."); DeBauche v.

Trani, 191 F.3d 499, 511-12 (4th Cir. 1999) (noting that, although section 1927 would not

authorize sanctions against an attorney for filing a single complaint, Rule 11 might permit such

sanctions); Bakker v. Grutman, 942 F.2d 236, 242 (4th Cir. 1991) ("Section 1927 was intended

to sanction conduct Rule 11 does not reach."). "The failure of a party to comply with the safe-

harbor requirements affects only the district court's authority to impose sanctions requested by a

party under Rule 11(c)(1)(A).  For example, failure to comply with the safe-harbor provisions

would have no effect on the court's authority . . . to award costs pursuant to 28 U.S.C.A. § 1927

or to impose sanctions within its inherent power."  Brickwood Contractors, Inc. v. Datanet

Eng'g, Inc., 369 F.3d 385, 389 n.3 (4th Cir. 2004).  Mr. Hennessy's argument, then, that, "where

the prerequisites for Rule 11 sanctions have not been met, sanctions under § 1927 should not be

allowed as a substitute," (Plaintiff's Response to Defendant's Motion for Attorneys' Fees and

Costs, at 6), is plainly erroneous.

    At the crux of the defendant's argument is the assertion that Mr. Hennessy should have

voluntarily dismissed the plaintiff's lawsuit either after this court dismissed most of her claims or

after her deposition revealed that there existed no basis for proceeding.  In support of this, the

defendant cites the fact that this court granted summary judgment in its favor on the sole claim

that was not dismissed and that, in opposition to the motion for summary judgment, the plaintiff

_____

defendant has not met.

attempted to assert a new breach of contract claim regarding her termination.  By the defendant's

reasoning, then, it was bad faith for the plaintiff to not dismiss the case at some point prior to the

defendant's filing of a motion for summary judgment.

Although the evidence is insufficient for this court to find that Mr. Hennessy acted in bad

faith by failing to dismiss the plaintiff's action after this court's dismissal order of July 25, 2006,

it is clear to the court that, after the plaintiff's deposition revealed that her remaining claim was

fundamentally infirm, Mr. Hennessy should have taken the advice of the defense attorneys and

voluntarily dismissed the action.  Accordingly, the defendant is awarded the portion of its

attorneys' fees which were incurred after Mr. Hennessy was on actual notice that the plaintiff's

complaint should be dismissed, which amount to $26,057.00.

It is undisputed that Mr. Hennessy had actual notice that no basis existed for proceeding

on the plaintiff's case after her deposition testimony revealed as much.  Although this court's

dismissal of all but one of the plaintiff's claims may have indicated to Mr. Hennessy that her

case was somewhat less than airtight, this court cannot say with the requisite degree of certainty

that Mr. Hennessy was aware that the plaintiff had no basis for proceeding on her claim for

breach of contract based on altered records until the plaintiff revealed during her deposition that

she had no evidence in support of that claim.  Therefore, to award the defendant attorneys' fees

from the date of this court's dismissal order, July 25, 2006, is not appropriate.  However, it is

abundantly clear that, as of August 28, 2006, Mr. Hennessy was aware that the plaintiff's case

was meritless and required dismissal.  Because Mr. Hennessy failed to so dismiss the plaintiff's

lawsuit, he unreasonably and vexatiously multiplied the litigation, and therefore is responsible

for the defendant's attorneys' fees reasonably incurred in their continued defense of the lawsuit.

15

See 28 U.S.C. § 1927; Williams v. Family Dollar Servs., Inc., 327 F.Supp.2d 582, 585-86 (E.D. Va. 2004).

The brief in response to the defendant's motion for summary judgment is emblematic of the unreasonableness and vexatiousness employed by Mr. Hennessy.  Although this court had clearly authorized the plaintiff to proceed only on the single claim of breach of contract based on altered records and a changing Agency Profile scoring system, Mr. Hennessy instead submitted on the plaintiff's behalf a three-page brief that made no mention of altered records, but instead argued that the defendant had breached its contract with the plaintiff by terminating her without justification, ostensibly in violation of a provision in her agency agreement. (Plaintiff's Response to Defendant's Motion for Summary Judgment).  The plaintiff attached a sworn affidavit from herself, which contradicted her sworn deposition testimony.  Despite Mr. Hennessy's assertions that "[i]n other Federal circuits, [a]ffidavits that contradict prior deposition testimony can be sufficient to raise a genuine issue of material fact," (Plaintiff's Response to Defendant's Motion for Attorneys' Fees and Costs, at 4), the law of the Fourth Circuit is clear on the issue.

> If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.  A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct.

Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984) (internal quotation omitted).  By abandoning the one claim that this court had specifically authorized the plaintiff to proceed with, and instead raising a claim that had never before been pled, Mr. Hennessy demonstrated his awareness that the plaintiff's deposition had indicated that her lawsuit was meritless, and therefore proceeded in bad faith to multiply the litigation.

16

The Fourth Circuit's decision in DeBauche, 191 F.3d at 511-512, is not to the contrary. While the court in DeBauche overturned as an abuse of discretion the district court's grant of attorneys' fees under section 1927 against a lawyer for filing a meritless complaint, it rested on the premise that the filing of a single complaint, as a matter of law, "cannot be held to have multiplied the proceedings unreasonably and vexatiously." Id. at 511.  In contrast, the defendant seeks attorneys' fees from Mr. Hennessy not for the initial filing of a lawsuit that turned out to be groundless, but rather for the bad faith multiplication of the lawsuit, by forcing the defendant to file a motion for summary judgment and then opposing that motion with a response that plainly contradicted prior admissions of the plaintiff.  Such conduct on the part of Mr. Hennessy is plainly of the nature which section 1927 was intended to address.  See Williams v. Family Dollar Servs., Inc., 327 F.Supp.2d 582, 585-86 (E.D. Va. 2004) (ordering attorneys' fees against a lawyer who failed to dismiss a lawsuit after he learned that his client was a plaintiff in a pending class action for the exact same alleged underlying injury).  See also Ford v. Temple Hosp., 790 F.2d 342, 350 (3d Cir. 1986) (affirming a lower court for awarding attorneys' fees in a similar situation).

The case of Meadow Ltd. P'ship v. Heritage Sav. & Loan Assoc., 118 F.R.D. 432 (E.D. Va. 1987) is particularly instructive.  There, the district court sanctioned the attorney for the plaintiff pursuant to Rule 11 for failing to inquire into the facts of his clients' case when inconsistencies began to arise.  Id. at 434.  The court found that, "no later than March 1, the fact that the claims were not 'well grounded in fact' should have been clear and counsel for the plaintiff should have been in a position to dismiss [certain] defendants."  Id.  This failure to dismiss the plaintiff's claims against several defendants when it became clear that the claims

were groundless was the basis for an award of attorneys' fees under Rule 11.  The court noted

that the plaintiff's counsel even filed a brief in opposition to a motion for summary judgment.

Id.  What is particularly noteworthy about this case is that, on appeal, the Fourth Circuit affirmed

the sanctions under Rule 11, but also indicated that sanctions would have been equally

appropriate under section 1927.  Fahrenz v. Meadow Farm P'ship, 850 F.2d 207, 211 n.1 (1988).

 Mr. Hennessy's actions in failing to dismiss a case that he knew or should have known

was baseless constitutes objective bad faith.  By "pursu[ing] a path that a reasonably careful

attorney would have known, after appropriate inquiry, to be unsound," his conduct was

"objectively unreasonable and vexatious."  Dal Pozzo v. Basic Mach. Co., Inc., 463 F.3d 609,

614 (7th Cir. 2006).  As such, the conduct is sanctionable under section 1927, and this court

therefore orders Mr. Hennessy to reimburse the defendant for its reasonable attorneys' fees

incurred in continued defense of the case after August 28, 2006, the date on which the plaintiff

was deposed.  The court further finds as a fact that the defendant's motion is not the result of any

perceived animosity between Williams Mullen and Mr. Hennessy, and, in fact, save for Mr.

Hennessy's bald assertions, there is no evidence that such animosity even exists.

 Because the court finds ample authority under section 1927 to sanction the plaintiff's

counsel, it declines to exercise its inherent authority to order that attorneys' fees be paid.

**B. Costs**

 The defendant also moves, under Federal Rule of Civil Procedure 54(d), for an order

requiring the plaintiff to pay its costs in defending the litigation.  As noted above, Rule 54(d)(1)

creates the presumption that costs will be awarded to a prevailing party.  See Cherry v.

Champion Int'l Corp., 186 F.3d 442, 446 (4th Cir. 1999).  The defendant has submitted a

Verified Bill of Costs, indicating that it seeks a total of $4,305.00 for filing fees, copying costs, and costs associated with deposing the plaintiff. (Verified Bill of Costs, Defendant's Motion for Attorneys' Fees and Costs, Exhibit A).  The defendant notes that it was the prevailing party, as the plaintiff's claims were entirely dismissed, and that no basis exists for the court to justify overcoming the presumption that costs be awarded to the prevailing party.  In response, Mr. Hennessy merely asserts that a request for costs in the amount of $4,305.00 is unreasonable, and that no costs should be awarded.

It is clear that the presumption that costs should be awarded to the prevailing party should not be overcome in this instance.  Not only did the defendant prevail, it did so via a Rule 12(b)(6) motion to dismiss and a Rule 56 motion for summary judgment.  This case was neither close nor difficult: most of the plaintiff's claims were dismissed and the plaintiff was unable to offer evidence in support of the claim that remained.  Therefore, this court finds that it is proper to require the plaintiff to reimburse the defendant for the costs set out in its Verified Bill of Costs.[6]

## C.  Reasonableness

In determining whether the requested attorneys' fees are reasonable, this court is guided by the twelve factors that the Fourth Circuit has instructed district courts to consider.  <u>See</u>

---

[6]Although section 1927 would permit a court to impose costs upon an attorney, the statute by its terms allows only <u>excess</u> costs to be imposed.  Because the court has found that the plaintiff should have dismissed her case after her deposition revealed it to be meritless, the only excess costs that could be imposed on Mr. Hennessy pursuant to section 1927 are those incurred after the date of the plaintiff's deposition, August 28, 2006.  The defendant's Verified Bill of Costs, however, indicates that the costs requested were incurred on or before that date.  Further, the court notes that the defendant's memorandum in support of its motion for costs requests that costs be taxed against the plaintiff herself.

Arnold v. Burger King Corp., 719 F.2d 63, 67 n.4 (4th Cir. 1983).  Because several of the factors

to be considered are included in determining whether an attorney has expended a reasonable

number of hours at a reasonable hourly rate, this court "is not required to engage in a lengthy

discussion of what portion of the award is attributable to each factor."  Id.  The defendant has

submitted the affidavit of Scott W. Kezman, a local attorney unaffiliated with Williams Mullen,

who has attested that, based on his experience in handling similar matters, his familiarity with

the Williams Mullen attorneys who worked on the case, and his review of Williams Mullen's

billing statements in the case, the hourly fees of the defendant's attorneys and the amount of time

each spent working on the case is reasonable.

Mr. Hennessy's response indicates his disbelief that the requested attorneys' fees are

reasonable.  He estimates that, at an hourly rate of $275, he spent less than $10,000 on this case,

and therefore asserts that the defendant's claim that its attorneys' fees for the entire course of

litigation are approximately $67,000 is unreasonable.  The court notes that, if the plaintiff's

response brief to the defendant's motion for summary judgment is indicative of the effort which

Mr. Hennessy put into the prosecution of this case, it is less than surprising that his estimated

fees are much lower.  In contrast to the plaintiff's three-page brief, accompanied by a four-page

self-serving affidavit, the defendant filed a fourteen-page brief accompanying its motion for

summary judgment, as well as several attached exhibits.  That Mr. Hennessy may have spent less

than forty hours working on this case from start to finish has no bearing on how much time was

reasonable for the defense attorneys to expend on the case.

As to Mr. Hennessy's ability to pay, he admitted to the court at oral argument that, had

the defendant's motion for attorneys' fees been brought pursuant to Federal Rule of Civil

Procedure 11, his conduct would likely be sanctionable, and he would be agreeable to paying. Such statement provides the court with sufficient evidence as to Mr. Hennessy's ability to pay the fees requested by the defendant in this case.  Because the evidence before the court is sufficient to demonstrate only that, from the date of the plaintiff's deposition, Mr. Hennessy knew or should have known that the plaintiff's entire case was baseless, the court assesses attorneys' fees incurred by the defendant in defending the litigation from that day forward.  The defendant calculates that amount of fees at $26,057.00.  That figure does not include several hours of work performed after August 28 for which, for various reasons, the defendant has chosen to not seek reimbursement. (See Declaration of David Burton, Defendant's Motion for Attorneys' Fees and Costs, Exhibit D).[7]  The court is persuaded that attorneys' fees in the amount of $26,057.00 were reasonably incurred by the defendant as a result of Mr. Hennessy's bad faith multiplication of this case, in violation of 28 U.S.C. § 1927.  The court therefore **ORDERS** Mr. Hennessy to pay the defendant $26,057.00 in attorneys' fees.

## V.  Motion to File Supplemental Response

After the court held oral argument on the defendant's motion for attorneys' fees, Mr. Hennessy filed with the court a motion for leave to file a supplemental response, indicating that he possessed evidence that counsel for the defendant was motivated to seek attorneys' fees because of a personal animus toward Mr. Hennessy.  Specifically, Mr. Hennessy seeks to introduce into evidence certain documents which he claims indicate Mr. Burton's involvement in a case or cases filed by Mr. Hennessy against the law firm of Williams Mullen.  According to

---

[7]It is also noted that the defendant does not seek reimbursement for the fees and costs associated with the instant motion.  (Declaration of David Burton, Defendant's Motion for Attorneys' Fees and Costs, Exhibit D).

Mr. Hennessy, Mr. Burton was not candid with the court in regards to his previous dealings with Mr. Hennessy, and therefore the court should grant him leave to submit said evidence, which will demonstrate that the defendant's motion for attorneys' fees was made because of Mr. Burton's personal dislike of Mr. Hennessy.

The court is unwilling to permit Mr. Hennessy to file a supplemental response, because the purported animus on the part of Mr. Burton is in reality a red herring.  Whether Mr. Burton was indeed motivated to file the instant motion by some sort of vendetta against Mr. Hennessy fails to change the fact that Mr. Hennessy's behavior in continuing to prosecute the plaintiff's baseless allegations unquestionably constitutes a violation of § 1927.  Although Mr. Hennessy argues that Mr. Burton has "unclean hands" and should therefore be precluded from relief, there is no allegation that Mr. Burton has engaged in any deceptive or unconscientious conduct that bears directly on the issues involved in this case.

## VI.  Conclusion

In order to punish Mr. Hennessy for his unreasonable and vexatious conduct, and to deter other attorneys from behaving in a like manner, the court assesses those attorneys' fees incurred by the defendant because of Mr. Hennessy's failure to voluntarily dismiss the case on or after August 28, 2006, the first day on which the evidence shows that the continuation of the plaintiff's suit was in bad faith.  The amount of these fees is $26,057.00.  Additionally, the court assesses against the plaintiff the costs reasonably incurred by defendant during the course of the litigation.  As demonstrated in the defendant's Verified Bill of Costs, the total amount of costs is $4,305.00.  The court finds these sanctions sufficient to "vindicate[] judicial authority without resort to the more drastic sanctions available," and to make the defendant whole "for expenses

caused by [its] opponent's obstinacy." Chambers v. NASCO, 501 U.S. 32, 46 (1991).

Additional sanctions would not serve the interests of justice.  Therefore, the defendant's motion for attorneys' fees and costs is **GRANTED**.  Attorney Thomas F. Hennessy is **ORDERED** to reimburse the defendant for $26,057.00 in attorneys' fees, and the plaintiff is **ORDERED** to reimburse the defendant for $4,305.00 in costs it incurred in defense of the above-captioned matter.  Mr. Hennessy's motion for leave to file a supplemental response is **DENIED**.

The Clerk is **REQUESTED** to enter judgment to this effect against Mr. Hennessy and the plaintiff, and to mail copies of this Order to counsel for all parties.

**IT IS SO ORDERED.**

                                    /s/
                              Jerome B. Friedman
                         UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
April 11, 2007